IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA<br>Plaintiff<br><br>vs<br><br>1) HECTOR LUIS RIVERA-QUILES<br>a/k/a Tito<br>**2) REY FRANCISCO QUIÑONES-MEDINA**<br>a/k/a Rey<br><br>Defendants | CRIMINAL 04-0368CCC |

**O R D E R**

  Before the Court are the Corrections and Objections to PSR filed by defendant Rey Francisco Quiñones-Medina on April 18, 2006 (**docket entry 147**), to which the United States responded on June 7, 2006 (**docket entry 157**). Defendant seeks that portions of the description of the offense conduct included in the Pre-Sentence Report (PSR) be corrected, objects to several findings contained in the PSR, and also petitions for a downward departure.

  Defendant requests three corrections to the PSR, and we address them seriatim. He first avers that page 2, paragraph 4, fourth line, states "October" when it should have read "August." The government agrees. Accordingly, the PSR shall be corrected to read "August" instead of "October." Next, defendant claims that on page 4, paragraph 5, line 8, the PSR incorrectly states that the undercover agent "looked" inside a Hyundai driven by defendant where he observed "a brick-like object alleged to be the cocaine they had arranged to purchase from the defendants." Defendant advances that the testimony of the undercover agent was that he reached inside the vehicle and opened a bag where the brick of cocaine was contained. The government responds that whether the cocaine was in plain view or inside a bag is immaterial since in either case the testimony of the undercover agent, Pablo Rivera-Santiago, confirmed that it was defendant who brought the cocaine. Still, the PSR should contain an accurate description of the events, so we have reviewed the trial notes of the testimony of agent Rivera-Santiago and have confirmed that his testimony was that he went to the vehicle to check the kilo of cocaine that defendant Quiñones-Medina had brought. Rivera-Santiago further described

that the kilo of cocaine was in the driver's seat of the Hyundai Santa Fe driven by defendant, inside a blue plastic bag with a GAP insignia, and wrapped in a T-shirt. The kilo of cocaine, thus, was not in plain view as the objected sentence of the PSR suggests. The PSR shall be amended accordingly.

The final correction requested by defendant is to page 4, paragraph 6, last line, where it is stated that "co-defendant Rivera-Quiles initiated the contacts with the UC." Defendant contends that, according to the testimony of the undercover agent, it was the other way around. The government responds that the PSR reflects only what the case agent told the Probation Officer. While the government is correct in its assertion given that the challenged phrase is based on what DEA S/A Lynette Delgado told the U.S. Probation Officer, so that the PSR reflects an accurate description of the offense we have reviewed the trial testimony offered by agent Rivera-Santiago on this matter. Rivera-Santiago stated that an informer told him he had a person who sold motor vehicles and drugs, _i.e._ Rivera-Quiles, and the informer was then instructed to give Rivera-Santiago's telephone number to Rivera-Quiles so that he would call him. Rivera-Santiago further testified that on July 20, 2004 Rivera-Quiles in fact called him. Hence, the contacts were initiated by Rivera-Quiles as the PSR recites, and the correction requested by defendant is unwarranted.

Having disposed of the requests for corrections, we turn now to the various objections raised by defendant. Defendant's first objection is to the upward adjustment of two (2) levels awarded him under U.S.S.G. §2D1.1(b)(1) for his reasonable foreseeability that co-defendant Rivera-Quiles possessed a weapon that would be used in furtherance of the drug offense. Defendant contends that there is no evidence that he knew about the weapon's presence in his co-defendant's car, nor were weapons ever mentioned in the conversations both had with agent Rivera-Santiago, and claims that there is proof that the possession of the weapon was unrelated to the offense conduct. The government responds that it is common for drug traffickers to protect shipments of drugs by the use of weapons.

The firearm enhancement of U.S.S.G. §2D1.1(b)(1) applies "if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. §2D1.1(b)(1), cmt. n. 3. "As long as the 'weapon's location makes it readily available to protect either the participants themselves during the commission of the illegal activity or the drugs and cash involved in the drug business, there will be sufficient evidence to

connect the weapons with the offense conduct.'" <u>United States v. Castillo</u>, 979 F.2d 8, 10 (1st Cir. 1992) (citing <u>United States v. Corcimiglia</u>, 967 F.2d 724, 727 (1st Cir.1992)). The enhancement also applies "whenever a codefendant's possession of a firearm in furtherance of [ ] joint criminal activity was reasonably foreseeable to the defendant." <u>United States v. Bianco</u>, 922 F.2d 910, 912 (1st Cir.1991) (citations omitted).  The defendant need not have himself possessed the weapon.  <u>United States v. Casas</u>, 356 F.3d 104, 130 (1st Cir. 2004). "Absent evidence of exceptional circumstances, . . . it [is] fairly inferable that a codefendant's possession of a dangerous weapon is foreseeable to a defendant with reason to believe that their collaborative criminal venture includes an exchange of controlled substances for a large amount of cash." <u>Bianco</u>, 922 F.2d at 912.

      The evidence in this case established that both defendants agreed to sell the undercover agent 5 kilograms of cocaine for $16,000.00 each, with one kilogram to be delivered first and upon payment for it the remainder four would follow.  Defendants arrived to the agreed place for the transaction in separate cars; Rivera-Quiles in a Toyota Matrix and Quiñones-Medina in a Hyundai Santa Fe.  Once they were arrested, both cars were impounded and searched.  The search of the car driven by co-defendant Rivera-Quiles revealed that a loaded .45 caliber firearm was located on the floormat.  The search of the car driven by defendant Quiñones-Medina uncovered a magazine loaded with bullets and other loose bullets inside the glove compartment.  These bullets, however, did not fit the .45 caliber firearm found in the co-defendant's car.

      The evidence also showed that during their negotiations with the undercover agent for the sale of the 5 kilos, defendants also explored the possibility of using him to transport 60 kilos of cocaine from St. Thomas to Puerto Rico.  Rivera-Quiles also mentioned on one occasion to the agent that they had 50 kilos in Santo Domingo waiting to be transported to Puerto Rico, a job which the undercover agent volunteered to do.  Neither of these transports ever took place.

      In view of the evidence on record, we have little trouble concluding that the adjustment under U.S.S.G. §2D1.1(b)(1) was correctly applied to defendant.  Both defendants were seasoned drug traffickers, with access to large amounts of narcotics.  On the particular date of the transaction at issue in this case, one kilogram of cocaine was being sold for $16,000.00. Defendant knew the amount of drug involved in the transaction, as he had participated in the

negotiations and personally delivered it. His co-defendant arrived to the place of the transaction with a weapon in his car. Given the quantity of drug involved and the amount of cash that was to be exchanged, it was reasonably foreseeable for defendant to expect that his codefendant would possess a firearm for the protection of the dug sale. See United States v. Sostre, 967 F.2d 728, 731 (1st Cir. 1992) (reasonably foreseeable to expect that a codefendant would possess a firearm in drug transaction that involved one kilogram of cocaine sold for $28,000).

The proof that defendant submits in support of his contention that the weapon is unrelated to the offense conduct is a statement made by Rivera-Quiles after his arrest explaining that he had the pistol in his car "just in case I needed it for something, you know how things are on the street." See Report of Investigation prepared on September 28, 2004 by Special Agent Lynette M. Delgado. But there is nothing in that statement making it clearly improbable that the weapon was connected with the offense. If anything, the statement denotes that the weapon was going to be used for anything that warranted it, including protection of the drug sale. Thus, we find that U.S.S.G. §2D1.1(b)(1) was properly applied in this case, and OVERRULE defendant's objection.

Defendant also seeks a minor role adjustment under U.S.S.G. §3B1.2, claiming that his co-defendant played a much more controlling role in the offense. This objection is plainly meritless. While it is true that the undercover agent had more telephone contacts with co-defendant Rivera-Quiles, defendant Quiñones-Medina was present in at least two face-to-face meetings with the undercover agent were they discussed the transportation of multiple kilograms of cocaine from St. Thomas. Quiñones-Medina was also present on the arranged date for the transaction, which in fact had to be postponed for one day because on the previously arranged date (the day before) he never showed up with the drugs. When the transaction finally took place on September 22, 2004, Quiñones-Medina was the person who brought the kilo of cocaine suggesting that he was either the source of the drugs or in close contact with that person. The evidence indicates that he was not merely a courier or mule, as he portrays himself, but rather a major player in this drug-trafficking scheme. He, thus, was not substantially less culpable than the average participant and fails to qualify for a mitigating role adjustment under U.S.S.G. §3B1.2. His protestations to the contrary are OVERRULED.

Defendant's following objection is absolutely implausible. Based on the fact that during closing argument he accepted responsibility for one (1) kilogram of cocaine, defendant pleads

Case 3:04-cr-00368-CCC   Document 164   Filed 09/14/06   Page 5 of 6
CRIMINAL 04-0368CCC                              5

for a downward adjustment for acceptance of responsibility under U.S.S.G. §3E1.1. However, said Guideline section "does not contemplate . . . a defendant's mere partial acceptance of responsibility." United States v. Valencia, 957 F.2d 153, 156 (5th Cir.1992). See also United States v. Johnston, 353 F.3d 617, 627 (8th Cir.2003) (holding it was not clearly erroneous for district court to deny acceptance of responsibility adjustment when defendant admitted to distributing methamphetamine but went to trial to dispute the charged quantity); United States v. Maliszewski, 161 F.3d 992, 1024 (6th Cir.1998) (holding it was not clearly erroneous for district court to deny acceptance of responsibility adjustment when defendant "consistently denied responsibility" for drug amounts attributed to him). In any event, his partial acceptance came after he had put the government to its burden of proof at trial. See Application Note 2 to U.S.S.G. §3E1.1. As defendant candidly recognizes, it was too little, too late. The U.S. Probation Officer acted correctly in failing to apply an adjustment under U.S.S.G. §3E1.1, and defendant's objection is OVERRULED.

       Finally, defendant seeks a downward departure, presumably under U.S.S.G. §5K2.13 (Diminished Capacity), claiming that at the time of the crime he was on leave from his regular job due to depression and receiving treatment for said condition. The offense took place during July-September 2004. The PSR indicates that on May 25, 2004 defendant was diagnosed with Mood Disorder/Depression by Dr. Luis H. Negrón-Mercado, prescribed medications, referred for partial hospitalization which he later abandoned, and evaluated again on August 25, 2004 by Dr. Carlos Cruz whose report is apparently ineligible. PSR, at ¶34, pp. 10-11.

       Section 5K2.13 of the Sentencing Guidelines permits a downward departure when a defendant commits an offense "while suffering from a significantly reduced mental capacity" that "contributed substantially to the commission of the offense." Application Note 1 to §5K2.13 provides: "'Significantly reduced mental capacity' means the defendant, although convicted, has a significantly impaired ability to (A) understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason; or (B) control behavior that the defendant knows is wrongful."

       The mere fact that a defendant suffered from depression and was being treated for it when he committed the offense of conviction is not enough to justify a downward departure under Guideline section 5K2.13. See United States v. Greenfield, 244 F.3d 158, 162 (D.C.Cir.2001) ("A diagnosis of depression, alone, does not establish that a defendant suffered

from 'significantly reduced mental capacity' under 5K2.13.") Defendant must specifically show that his medical condition impaired his ability to understand the wrongfulness of his behavior or his ability to control behavior he knew was wrong. However, the limited information included in the PSR does not allow us to make such a conclusion, nor has defendant submitted additional evidence which would serve to establish that his mental capacity was significantly reduced at the time he committed the offense. On the present state of the record, a downward departure for diminished capacity is not warranted. While defendant announced in his motion that he had medical records which were being translated for submission to the Court's consideration on this issue, as of today he has failed to do so despite the fact that his motion was filed since April 18, 2006. Hence, the Court will not consider any additional evidence on this matter unless defendant shows good cause for its late submission.

      We need go no further. As explained above, except for a couple of defendant's requests for correction, all the rectifications, objections and departures demanded in his motion lack merit. Accordingly, the Corrections and Objections to PSR filed by defendant Rey Quiñones-Medina on April 18, 2006 (**docket entry 147**) are GRANTED IN PART AND DENIED IN PART.

      SO ORDERED.
      At San Juan, Puerto Rico, on September 14, 2006.

      S/CARMEN CONSUELO CEREZO
      United States District Judge